## CIRCUIT COURT OF THE CITY OF RICHMOND

P. Richard Hobbs

v.

Richmond Metropolitan Authority
and John Doe

August 7, 1995

Case No. LA-461-4

BY JUDGE RANDALL G. JOHNSON

In this personal injury action, plaintiff claims that he was injured when a toll attendant at the Forest Hill exit on the Powhite South Parkway in Richmond negligently caused a tollgate to fall onto plaintiff's car, thereby causing plaintiff to "slam on his brakes" and to be "thrown about his vehicle with great force and violence." The case is presently before the court on defendant Richmond Metropolitan Authority's (RMA) plea of governmental immunity.

RMA, which owns and operates the subject tollbooth, was created in 1966 as a "political subdivision and public body corporate and politic of the Commonwealth of Virginia" for the purpose, *inter alia*, of constructing and maintaining highways in the Richmond metropolitan area. *See* Acts of Assembly of 1966, c. 178. The parties have stipulated that for purposes of RMA's plea, it is a municipal corporation, and the court accepts that stipulation. *See City of Richmond v. Richmond Metropolitan Authority*, 210 Va. 645, 172 S.E.2d 831 (1970), in which the Supreme Court held that for purposes of the Proration Act, former Va. Code § 58-822, RMA is a municipal corporation. 210 Va. at 649. The question in this case, then, is whether a municipal corporation is immune from suits for negligence committed in the operation of tollgates on its highways. I hold that it is not.

The activities of municipal corporations are of two types: governmental and proprietary. While a municipal corporation is not liable for acts of negligence in performing governmental functions, it is liable for negli-

gence in performing proprietary ones. With regard to what activities fall within which function, it is well-settled that when an act is for the common good of all without the element of special corporate benefit or pecuniary profit, such act is governmental. *Fenon v. City of Norfolk*, 203 Va. 551, 556, 125 S.E.2d 808 (1962). Otherwise, it is proprietary. As *Fenon* points out, however, "[t]he difficulty [in cases of this kind] lies not in the statement of the governing principles of law, but in their application to particular facts." *Id. (quoting Bolster v. City of Lawrence*, 225 Mass. 387, 114 N.E. 722 (1917)).

At this point, it may seem logical to say that because a tollgate is used in the collection of money, it is part of a proprietary function; that is, toll equals profit — ergo, proprietary. The fact is, however, that whenever public roads are built, they have to be paid for. Some are paid for with taxes. Some are paid for with bonds. Some are paid for with tolls. The court is unwilling to fashion a rule which makes recovery for personal injury dependent upon the method chosen by a municipality to pay for the street on which the injury occurs. Some other test must be used.

The court concludes that the proper test is the one which already exists generally with regard to highways. Specifically, the law of Virginia is that the design and layout of streets and highways, as well as the regulation of traffic, including the decision of whether and where to install traffic signals, guardrails, roadway markings, curbings, and like devises, are governmental functions. *Bialk v. City of Hampton*, 242 Va. 56, 58, 405 S.E.2d 619 (1991); *Freeman v. City of Norfolk*, 221 Va. 57, 60, 266 S.E.2d 885 (1980). The duty to keep streets in repair and in a safe condition for travel, free from defects and obstructions, however, is a proprietary one. *Bialk*, 242 Va. at 58; *Freeman*, 221 Va. at 57. *See also Transportation, Inc. v. Falls Church*, 219 Va. 1004, 1005-06, 254 S.E.2d 62 (1979); *City of Norfolk v. Hall*, 175 Va. 545, 551-52, 9 S.E.2d 356 (1940). The court concludes that the operation of a tollgate is proprietary.

The operation of a tollgate is not like the decision of whether or where to place a traffic light or guardrail. The decision whether to have tollgates and where to have tollgates is. In fact, the negligent design or placement of a tollgate may well meet that test for governmental immunity set out in the cited cases. The operation of a tollgate, however, does not. Such operation is, in the court's view, more akin to maintaining a highway than it is to planning it. Moreover, as was said in *Ashbury v. City of Norfolk*, 152 Va. 278, 147 S.E. 223 (1929), it is the exercise of political, *discretionary*, and legislative authority for which municipalities are immune, 152 Va. at

291, not for ministerial tasks. *Id.* It is hard to imagine a task more ministerial than the collection of tolls.

When a car comes to a tollbooth, its driver is supposed to pay a toll. If the toll is not paid, the tollgate is not raised. If the toll is paid, the tollgate is raised and remains raised until the car goes through. Absolutely no discretion is exercised. Indeed, many, if not most, of the tollbooths on the subject highway are automatic. It cannot be seriously argued that the function performed at those booths, or at identical booths that are attended, is discretionary. RMA's plea will be overruled.